IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIPTRONIX, INC, <br><br> Plaintiff, <br><br> v. <br><br> OMNIVISION TECHNOLOGIES, INC., et al., <br><br> Defendants. | No. C -10-05525 SBA (EDL) <br><br> **OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY EXPERT** |

On December 4, 2012, Plaintiff filed a Motion to Disqualify Defendant's Proposed Expert Witness, Dr. Sharon Ferrans. This matter was fully briefed, and the Court issued an order on January 11, 2013 denying Plaintiff's motion. This opinion provides the Court's reasoning for the denial of the motion.

Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system. See Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir.1980) ( "A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial ... including disqualifying expert testimony."). Accordingly,

> Although courts have declined to use a brightline rule to determine whether an expert should be disqualified, see, e.g., Koch Ref. Co., 85 F.3d at 1181, they have articulated general principles. In particular, disqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation. See Wang Labs., Inc. v. Toshiba Corp., 762 F.Supp. 1246, 1248 (E.D.Va.1991). However, if only one of the two factors is present, disqualification likely is inappropriate. See Greene, Tweed of Delaware, Inc., 202 F.R.D. at 429; English Feedlot, Inc., 833 F.Supp. at 1502 (If "any confidential disclosures were undertaken without an objectively reasonable expectation that they would be so maintained (hence, any confidentiality was

> waived), or if, despite a relationship conducive to such disclosures, no significant disclosures were made, disqualification is inappropriate."). In addition to these two factors, the Court also should consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process.

Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). Disqualification, however, is a "drastic measure that courts should impose only hesitantly, reluctantly and rarely." Id. at 1092. In applying the Hewlett-Packard factors, the Court finds that disqualification is not warranted.

**1.    There has been no showing of a confidential relationship between Plaintiff and Dr. Farrens**

The party seeking disqualification of an expert witness bears the burden of demonstrating that it was reasonable for it to believe that a confidential relationship existed, Mayer v. Dell, 139 F.R.D. 1, 3 (D.D.C.1991), "and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate," Pinal Creek Group v. Newmont Mining Corp., 312 F.Supp.2d 1212, 1223 (D. Ariz. 2004). In evaluating the reasonableness of the party's assumption, the Court may consider many factors, including

> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.

Stencel v. Fairchild Corp., 174 F.Supp.2d 1080, 1083 (C.D. Cal.2001). "Other factors include whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party." Hewlett-Packard, 330 F. Supp. 2d at 1093-94.

In November 2010, Plaintiff and Ferrans entered into a non-disclosure agreement ("NDA"). Iams Decl. Ex. A. Plaintiff argues that it is clear from the NDA that Plaintiff and Farrens entered into a confidential relationship, and that Plaintiff "retained" Farrens. However, the NDA is not a

2

retainer agreement, and states that it governs only "discussions and activities that Ziptronix . . . have or will have with Dr. Sharon Farrens, . . . for the purpose of providing consulting services to Ziptronix related to certain scientific, technical and business matters . . . ." Iams Decl. Ex. A at 1. The NDA does not cover fees for services, nor does it give any indication about the scope of any retention.

Further, the subsequent contacts between Plaintiff and Farrens do not show a confidential relationship. Farrens states that after signing the NDA, Plaintiff never gave her any confidential information, never gave her any consulting work, and did not tell her what patents were at issue. Farrens Decl. ¶ 4. Plaintiff does not dispute that it did not give Farrens any confidential information. After signing the NDA in November 2010, Farrens contacted Plaintiff in January 2011, but Plaintiff did not get back in touch with her. Farrens Decl. ¶ 7. In August 2012, Dr. Farrens contacted Plaintiff again. In that August 9, 2012 email, Farrens stated: "Will you still be needing my services at any time? I would need to know an estimation of timing in order to plan my consulting hours. To date, of course, we have not had any work and perhaps you will no longer need my services." Iams Decl. Ex. C. Plaintiff's counsel did not return Ferrans' email until approximately three weeks later. In the meantime, having not heard from Plaintiff, Ferrans signed a retainer agreement with Defendant Taiwan Semiconductor Manufacturing Company.

Under the totality of the circumstances, including the dearth of contact between Plaintiff and Ferrans over the course of almost two years, this factor weighs against disqualification.

**2.   There has been no showing that confidential information was disclosed**

As stated in Hewlett-Packard:

Confidential information essentially is information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." Paul, 123 F.R.D. at 279; see also Pinal Creek Group, 312 F.Supp.2d at 1224; United States ex rel., Cherry Hill Convalescent Ctr., Inc., 994 F.Supp. at 251; Mayer, 139 F.R.D. at 3. It could include discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." Mayer, 139 F.R.D. at 4; see also Pinal Creek Group, 312 F.Supp.2d at 1224. Thus, at least one court has concluded that "[c]ommunication based upon technical information as opposed to legal advice is not considered privileged." Nikkal Indus., Ltd. v. Salton, Inc., 689 F.Supp. 187, 191–92 (S.D.N.Y.1988).

3

Hewlett-Packard, 330 F. Supp. 2d at 1094.

Here, Plaintiff does not dispute that it did not provide any confidential information to Farrens. See Pl.'s Mot. at 2 (stating that "it did not involve Dr. Farrens in any detailed substantive discussion regarding the issues in the case."); Farrens Decl. ¶ 4. Therefore, this factor weighs against disqualification.

### 3. Fundamental fairness and policy considerations do not weigh in favor of disqualification

Although the two primary factors weigh against disqualification, the Court briefly considers fundamental fairness and policy considerations. The Hewlett-Packard court stated:

> The Court also should consider issues of fundamental fairness, see, e.g., Pinal Creek Group, 312 F.Supp.2d at 1222; Paul, 123 F.R.D. at 280 (asking whether the moving party was unduly disadvantaged and the opposing party unduly advantaged), and whether any prejudice might occur if an expert is or is not disqualified, see, e.g., Stencel, 174 F.Supp.2d at 1083; United States ex rel., Cherry Hill Convalescent Ctr., Inc., 994 F.Supp. at 251. Thus, the Court may ask not only whether there is the appearance of a conflict of interest, but also "whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert." United States ex rel., Cherry Hill Convalescent Ctr., Inc., 994 F.Supp. at 251. "[T]he interest in disqualification must substantially outweigh the interest in nondisclosure and disqualification of the expert." Proctor & Gamble Co., 184 F.R.D. at 414. Consideration of prejudice is especially appropriate at late stages in the litigation, at which time disqualification is more likely to disrupt the judicial proceedings. See, e.g., United States ex rel., Cherry Hill Convalescent Ctr., Inc., 994 F.Supp. at 252.
>
> It is important to consider other policy concerns in order to achieve the goal of protecting the integrity of the adversary process and of promoting public confidence in the legal system. Such concerns include consideration of the parties' strategic positions, see Grant Thornton, LLP v. Fed. Deposit Ins. Corp., 297 F.Supp.2d 880, 882 (S.D.W.Va.2004); W.R. Grace & Co. v. Gracecare, Inc., 152 F.R.D. 61, 64 (D.Md.1993), and avoidance of creating "troublesome incentives for both experts and the retaining party," Pinal Creek Group, 312 F.Supp.2d at 1227. For example, if experts are permitted to breach confidentiality agreements, they might be motivated "to sell their opinions to the opposing parties or the highest bidder without concern about the potential confidentiality of their previous consultations." Id. The retaining party might be motivated "not to withdraw a previously designated expert while litigation is pending for fear that the party's confidential information would become available to its adversary." Id. at 1227–28. However, if "experts are too easily disqualified, unscrupulous attorneys may attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance." Stencel, 174 F.Supp.2d at 1083; see also English Feedlot, Inc., 833 F.Supp. at 1505; Paul, 123 F.R.D. at 281–82.

Hewlett-Packard, 330 F. Supp. 2d at 1094-95.

For almost two years, Plaintiff showed no interest in working with Farrens, even as this case

4

moved toward claim construction, and Plaintiff only belatedly contacted Farrens after she contacted Plaintiff almost two years after the NDA was signed. It is not clear from Plaintiff's conduct that it intended to retain Farrens. Fundamental fairness does not dictate that Farrens should be disqualified.

Plaintiff has not shown prejudice, and only argues that Defendant's actions have prejudiced Plaintiff by prevented it from retaining an expert of its choosing. However, as stated above, it was Plaintiff's inaction over nearly two years that prevented Plaintiff from being able to retain Farrens. Further, Plaintiff has not shown any improper motive by Defendant in reaching out to Farrens. There has been no showing that Defendant knew that Plaintiff had talked to Farrens in November 2010 when it contacted her in August 2012, and even assuming it did, that alone would not be sufficient to grant the motion.

**Conclusion**

For the reasons stated in this Opinion, Plaintiff's Motion to Disqualify Dr. Ferrans is denied.

IT IS SO ORDERED.

Dated: January 14, 2013

ELIZABETH D. LAPORTE
United States Magistrate Judge

5