SEAN P. DEBRUINE (SBN 168071)
sean.debruine@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, California 94025-4008
Telephone:     (650) 838-2000
Facsimile:      (650) 838-2001

RICHARD M. MCDERMOTT (admitted *pro hac vice*)
rick.mcdermott@alston.com
BLAS P. ARROYO (admitted *pro hac vice*)
blas.arroyo@alston.com
JITENDRA MALIK (admitted *pro hac vice*)
jitty.malik@alston.com
TRAVIS J. IAMS (admitted *pro hac vice*)
travis.iams@alston.com
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
Telephone:     (704) 444-1000
Facsimile:      (704) 444-1111

Attorneys for Plaintiff
ZIPTRONIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZIPTRONIX, INC., | ) Case No. 4:10-cv-05525-SBA(EDL) |
| Plaintiff, | ) **RESPONSE IN OPPOSITION TO** |
| | ) **DEFENDANT TAIWAN** |
| v. | ) **SEMICONDUCTOR MANUFACTURING** |
| | ) **COMPANY, LTD, AND TSMC NORTH** |
| | ) **AMERICA CORP.'S MOTION FOR** |
| OmniVision TECHNOLOGIES, INC., | ) **SUMMARY JUDGMENT** |
| TAIWAN SEMICONDUCTOR | ) |
| MANUFACTURING COMPANY, LTD., and | ) **Hearing Date:** March 4, 2013 |
| TSMC NORTH AMERICA CORP., | ) **Hearing Time:** 1:00 P.M. |
| | ) **Location:** Courtroom 1, 4th Floor |
| Defendants. | ) **Judge:** Hon. Saundra B. Armstrong |

1

2

3

**TABLE OF CONTENTS**

4

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ....................................................................................1

       A.     The Parties and Their Relationship.............................................................1

       B.     The Products at Issue .................................................................................2

       C.     Ziptronix's Patent Portfolio and Interaction with Defendants.....................4

       D.     The Accused Activity .................................................................................5

III.   ARGUMENT........................................................................................................9

       A.     The Evidence Supports Ziptronix's Claims of Direct Infringement Against the
              TSMC Parties...........................................................................................10

       B.     The Evidence Further Supports Ziptronix's Claims of Indirect Infringement
              Against the TSMC Parties ........................................................................15

IV.    CONCLUSION...................................................................................................22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................................9

*Bascom Research LLC v. Facebook, Inc.*,
  No. C 12 -6293, -6294, -6295, -6296, -6297, 2013 WL 968210, *4 (N.D. Cal. Mar. 12,
  2013) .......................................................................................................................19

*DSU Med. Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006)..................................................................................15

*Fellowes, Inc. v. Michilin Prosperity Company, Ltd.*,
  491 F. Supp. 2d 571, 580-81 and 583 (E.D. Va. 2007) ..............................................12

*Global-Tech Appliances, Inc. v. SEB, S.A.*,
  131 S. Ct. 2060, 2068 (2011).....................................................................................15

*Halo Electronics, Inc. v. Pulse Engineering, Inc.*,
  810 F. Supp. 2d 1173, 1207 (D. Nev. 2011) ..............................................................14

*Hunt v. Cromartie*,
  526 U.S. 541, 552 (1999)............................................................................................9

*In re Bill of Lading Transportation and Processing System Patent Litigation*,
  681 F.3d 1323 (Fed. Cir. 2012)..................................................................................19

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
  385 F.3d 1360, 1378 (Fed. Cir. 2004)........................................................................15

*ION, Inc. v. Sercel, Inc.*,
  No. 5:06-CV-236-DF, 2010 WL 3768110, *3 (E.D. Tex. Sept. 16, 2010) ...................14

*Lake Cherokee Hard Drive Tech., L.L.C. v. Marvell Semiconductor, Inc.*,
  2:10-CV-216-JRG, 2013 WL 4054915 (E.D. Tex. Aug. 6, 2013) ................................14

*Litecubes, LLC v. Northern Light Products, Inc.*,
  523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ..............................................................10, 13

*Lutron Electronics Co., Inc. v. Crestron Electronics, Inc.*,
  No. 2:09-CV-00707 CW, 2013 WL 4881570, *6 (D. Utah Sept. 12, 2013) ..................20

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369, 1376-77 (Fed. Cir. 2005) ..............................................................13, 18

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283, 1303-04 (Fed. Cir. 2012) ...................................................................15

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   830 F. Supp. 2d 815, 842 (N.D. Cal. 2011) ...............................................................20

*North American Philips Corp. v. American Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994)....................................................................................10

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)............................................................................10, 11

*Quality Tubing, Inc. v. Precision Tube Holdings Corp.*,
   75 F. Supp. 2d 613, 614 (S.D. Tex. 1999) .................................................................14

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000)..................................................................................13

*Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Electronics Corp.*,
   531 F. Supp. 2d 1084, 1114 (N.D. Cal. 2007) ...........................................................18

*Tarkus Imaging, Inc. v. Adobe Systems, Inc.*,
   No. 10-63-LPS, 2012 WL 2175788, *3-5 (D. Del. June 14, 2012)............................20

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296, 1311 (Fed. Cir. 2010)..............................................................10, 12, 13

*Vasudevan Sofware, Inc. v. MicroStrategy Inc.*,
   No. 3:11-cv-06627-RS, D.E. 332 at p. 3-4 .................................................................19

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988)....................................................................................15

**STATUTES**

35 U.S.C. §§ 271(a) and 271(g) ........................................................................... passim

35 U.S.C. § 271(b) ......................................................................................................9, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ........................................................................................................9

## I.    INTRODUCTION

Defendants Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC Ltd.") and wholly owned subsidiary TSMC North America Corp. ("TSMC NA") (collectively, "TSMC" or "Defendants") have moved the Court for the entry of summary judgment dismissing all of the claims for patent infringement asserted against them by Plaintiff Ziptronix, Inc. ("Ziptronix").   The Defendants' motion is based on the assertion that their accused activities allegedly fall outside the ambit of United States patent laws.   As is demonstrated below, however, the Defendants' relevant acts are clearly encompassed by the scope of United States law under controlling precedent such that the Defendants' Motion must be denied.

## II.   STATEMENT OF FACTS

### A.    The Parties and Their Relationship

Co-movant TSMC NA is a domestic corporation organized under the laws of the State of California which has its headquarters at 2585 Junction Avenue, San Jose, California, in this judicial district.[1]   TSMC NA's parent company, TSMC Ltd., is a Taiwanese entity headquartered in Hsinchu, Taiwan.[2]   TSMC NA serves as the operations arm of TSMC Ltd. in North America. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Co-defendant OmniVision Technologies, Inc. ("OmniVision") is TSMC's ██████████████ for the products at issue in this case: backside-illuminated ("BSI") CMOS image sensors. OmniVision is a Delaware corporation with its headquarters located at 4275 Burton Drive, Santa Clara, California, also within this judicial district.   OmniVision's Answer to Second Supplemental and Amended Complaint ("OmniVision's Amended Answer") (D.E. 147), ¶ 2.   OmniVision controls

---

[1] *See* TSMC Defendants' Answer and Affirmative Defenses to Plaintiff Ziptronix, Inc.'s Second Amended Complaint at ¶ 3 ("TSMC's Amended Answer") (D.E. 146).

[2] *Id.*

[3] *See* Declaration of Travis J. Iams ("Iams Decl."), Ex. 1, Deposition Transcript of Joshua Cheng ("Cheng Dep. Tr.") at 37:6-9 ███████████████████████████████████████████████ ████████████████████████████████████ *id.* at 23:17-21 ██████████████ ███████████████████████.

1    nearly thirty percent (30%) of the worldwide market for CMOS image sensors which are used in a

2    variety of applications, including, primarily, in consumer electronics such as smartphones and

3    tablets, as well as in varying applications in the notebook, security, and automotive industries.[4]

4         As discussed further below, TSMC Ltd. serves as the "long-time foundry and process

5    technology partner" of OmniVision in the fabrication of OmniVision's image sensors for sale and

6    use throughout various countries in the world, including the United States.[5]

7         **B.     The Products at Issue**

8         At issue in this action is technology associated with the manufacture and structure of a

9    particular type of image sensor.  Image sensors, in a general sense, are devices that capture and

10   convert light into an electronic signal, and can be found in practically all devices with photo-

11   capturing capabilities.   As indicated, the products at issue in this action are backside-illuminated

12   ("BSI") CMOS image sensors, in contrast to predecessor technology image sensors which comprised

13   so-called "front-side" illumination or "FSI."  Prior to the incorporation of the innovations of the

14   Ziptronix patents-in-suit, image sensors sold by OmniVision and its competitors were based

15   primarily on such predecessor FSI technologies.

16        In a front-side illuminated image sensor, the circuitry is deposited over a photosensitive

17   diode, i.e., a light detecting device, which is formed in a semiconductor substrate.  Based on this

18   structure, light received through the lens must travel through and around the metal layers before it is

19   received by the diode and captured as an image by the image sensor.   In contrast, Ziptronix's

20   patented technology at issue in this case allows for direct bonding of a so-called "carrier wafer" to

21   the "device wafer" containing the circuitry, including the various layers of metallization.[6]  In light of

22   the strength of the resulting bond (despite the fact that it is achieved at relatively low temperature),

23   the device can then be "flipped" and the device wafer ground down to a thin, transparent layer.  As a

24

25   [4] *See* OmniVision's website at: www.ovt.com/aboutus/; *see also* Iams Decl., Ex. 2, Deposition
     Transcript of Ray Cisneros ("Cisneros Dep. Tr.") at 47:5-14 ███████████████████
26   ████████████████████.

27   [5] *See* Iams Decl., Ex. 3 (OmniVision press release launching its BSI image sensor products and
     referring to TSMC as its "long-time foundry and process technology partner . . .").

28   [6] *See* Iams Decl., Ex. 4 at Slide 2 (produced natively).

result, transmitted light is received directly by the diode and need not travel through and around the metal layers, providing a number of advantages including enhanced performance for smaller pixels and high performance in low light conditions.[7]   The contrasting FSI and BSI designs and related light transmission paths are shown in representative figures below:[8]



Through its active partnership with TSMC Ltd. and TSMC NA in implementing the technology presently at issue, OmniVision became the ██████████████████████████████ ██████████████████████████████████   Since then, OmniVision has extensively marketed its BSI image sensor products to leading providers of consumer electronics, and manufactures in other market segments, in the United States.[10]   OmniVision's goal

---

[7] *See*  Iams  Decl.,  Ex.  5  at  OVT0255509 ████████████████████████████████ ████████████████████████████████████.

[8] OmniVision's website at: http://www.ovt.com/technologies/technology.php?TID=2.

[9] *See* Iams Decl. at Ex. 6 (2010 Form 10-K Disclosure claiming to be the first to ██████████ ███████████████████████████████); *id.*, Ex. 7 at Slide 10 (produced natively) (presentation noting that ████████████████████████████████); *id.*, Ex. 3 (OmniVision press release launching its BSI image sensor products).

[10] *See e.g.*, Iams Decl., Ex. 8 ███████████████████████████████████████ ███████████████████████████████████, *id.*, Ex. 9 (same for 2009); *id.*, Ex. 10 (same for 2011); *id.*, Ex. 2, Cisneros Dep. Tr. at 41:15-42:19 ██████████████

1    is to ████████████ in which the consumer product manufacturer will, for example, ████████

2    ████████████████████████████████████████  The results of these efforts have been

3    overwhelmingly successful in that OmniVision has secured total sales of the accused BSI sensors of

4    ████████████████████████████████████████████████████[12] a

5    ████████████████ of which are sold to OmniVision's customers ████████████████[13]  Indeed,

6    based on sales data furnished by OmnIVision for its 2013 fiscal year, BSI images sensors accounted

7    for over ██████ of OmniVision's total sales.[14]

8       **C.    Ziptronix's Patent Portfolio and Interaction with Defendants**

9       Ziptronix was spun-off in October 2000 from Research Triangle Institute (now RTI

10   International), where the technology at issue in this case was originally developed, to deliver

11   innovations in the electronics industry through its three-dimensional integrated circuit technologies.

12   As a result of this technology development and as a part of this mission, Ziptronix owns a portfolio

13   of patents, including those asserted in this action directed to the bonding technology essential to the

14   fabrication of BSI image sensors, as well as patents directed to the structures of the image sensors

15   themselves. ████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████[15] ████████████████████████████████████████

19

20   ████████████████████████████████████████████████████████

21   ████████████████████).

     [11] *See* Iams Decl., Ex. 2, Cisneros Dep. Tr. at 55:20 – 56:2 ████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████.

     [12] *See* Iams Decl., Exs. 11-13 (████████████████████████████

24   ████████████; *id.*, Ex. 14 ████████████████████████; *id.*, Ex. 15

25   ████████████████████████████████).

     [13] *See e.g.*, Iams Decl., Ex. 16 at OVT0450951 (presentation to OmniVision's board of directors

26   showing ████████████████████████████████████████████).

27   [14] Iams Decl., Ex. 14 (total BSI sales for fiscal year 2013); *id.*, Exs. 16-18 (detailing total sales for
     quarters 1-3 of fiscal year 2013, respectively).

28   [15] *See* Iams Decl., Ex. 19 ████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ██████████████████████████████████████████

3     The contacts between the parties occurred from time to time over a period of several years

4 prior to the commencement of this action in late 2010.[17]  Documents generated internally by TSMC,

5 and produced by TSMC in this action, reflect ████████████████████████████████████

6 ███████████ as well as the recognition of ████████████████████████████████████

7 ████████[18]

8     **D.**    **The Accused Activity**

9     As noted previously, the TSMC entities serve as OmniVision's long-time foundry and

10 process technology partner in the manufacture and delivery of the accused BSI image sensor

11 products at issue in this action.[19]  In this capacity, TSMC Ltd. manufactures ████████████

12 ████████████████ on OmniVision's behalf, including the ████████████████████

13 ███████████████████████████ Upon completion of the fabrication of the ████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ███████████████████[20] ██████████████████████████████

18

---

19    ████████████████████████, *id.*, Ex. 20 (email forwarding ████████████████████ *id.*, Ex.

20 21 ████████████████████████████.

21 [16] *See e.g.*, Iams Decl., Ex. 22 ████████████████████████████████████████

22 ████████████████████████████████████.

23 [17]*See e.g.*, Iams Decl., Ex. 23 ████████████████████ *id.*, Ex. 24 ████████████

24 ████████████████ *id.*, Ex. 25 ████████████████ *id.*, Ex. 26 ████████

25 ████████████████████████ *id.*, Ex. 27 ████████████████████ *id.*, Ex. 28 ████████████████; *id.*, Ex. 28 ██████████████

26 ████████████████████.

27 [18] Iams Decl., Ex. 29 at TSMCZIP04465632; *see also id.*, Ex. 20 at TSMCZIP03970187

28 ████████████████████████████████████.

29 [19] *See* Iams Decl., Ex. 3 (press release announcing OmniVision's launch of BSI); *id.*, Ex. 30 ████████

30 ████████████████████████████████████████████.

31 [20] *See* TSMC Br., Gorman Decl., Ex. C at 20 (showing TSMC having over ████████████████████ in

32 both ████████████████; Iams Decl., Ex. 31, Deposition Transcript of Simon Yaou-Dong Wang

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████

3      The manufacture of the accused BSI image sensors by TSMC Ltd. is triggered directly by

4 commercial sales activity involving the TSMC and OmniVision entities in the United States.

5 Indeed, ████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████ The

7 manufacture and delivery of the accused BSI image sensors originates with █████████

8 █████████████████████████████████████ to OmniVision in the United

9 States.[22]   Indeed, the sales quotes provided by ████████████████████████████

10 █████████████████████████████[23]   Once the sales quotes have been

11 ██████████████████████████████ OmniVision then places specific purchase

12 orders for the BSI products with TSMC NA, also within the United States.[24]

13      TSMC NA then enters the details of the purchase order received from OmniVision in the

14 United States into a system maintained on a shared computer network with TSMC Ltd. so that the

---

("Wang Dep. Tr.") at 153:2-11, 158:8-15 (acknowledging ████████████████
██████████████████████████.

[21] *See* Iams Decl., Ex. 1, Cheng Dep. Tr. at 37:6-9 ████████████████████████████
████████████████████ *id.* at 23:17-21 █████████████
████████████████ *id.*, Ex. 31, Wang Dep. Tr. at 40:5-9
█████████████████████████████████████████████████████
█████████████████████.

[22] Iams Decl., Ex. 31, Wang Dep. Tr. at 116:1-4 ███████████████████████
██████████████████████████████████.

[23] *See* Iams Decl., Ex. 1, Cheng Dep. Tr. 59:13-22 ████████████████████
█████████████████████████████████████████████████████
████████████████████████.

[24] Although Defendants' brief notes that purchase orders are allegedly submitted by OmniVision's
foreign subsidiaries located in either Singapore or Grand Cayman, the purchase orders themselves
call for invoices to be directed to said subsidiaries ████████████████
██████████████████████ TSMC Br., Cheng Decl., Ex. B (Purchase Orders)
███████████████████████████████████████ TSMC Ltd. and
OmniVision, specifically authorizes purchase orders to be submitted by certain subsidiaries on
OmniVision's behalf.   *See* Iams Decl., Ex. 30 at TSMCZIP02438222 ████████████
████████.

1  ████████████████████████████████████[25]  Once the accused image sensors are

2  manufactured and delivered to the ███████████████████████████████ TSMC NA

3  sends an invoice to OmniVision, also in the United States, for payment.[26]  OmniVision then

4  authorizes and issues payment to ██████████████████████████████████████

5  ████████████████████[27] ████████████████████████████████████████

6  █████████████████████[28]

7      As noted previously, OmniVision has extensively promoted and sold the accused BSI image

8  sensor products to end-use customers in the United States.[29]  For example, OmniVision entered into

9  a ██████████████████████████████████████ in the United States for the

10  supply of the accused BSI image sensor products for incorporation in █████████ consumer

11  products, including various models of the ██████ and ██████ for sale in the United States and

12  elsewhere.[30]  According to OmniVision, ████████████████████████████████

13  ██████ are to end customers located within the United States.[31]  As OmniVision's █████████

14  ████████████████████████████████████████████████████████

15

16

17  [25] See TSMC Br., Cheng Decl. ¶ 5; Iams Decl., Ex. 1, Cheng Dep. Tr. at 40:15 – 41:3.

18  [26] See Iams Decl., Ex. 1, Cheng Dep. Tr. at 41:4-6 ████████████████████████

19  [27] See e.g., Iams Decl., Ex. 32 (wire transfer of funds to ███████████████████████

20  [28] See Iams Decl., Ex. 1, Cheng Dep. Tr. at 41:7-13 ████████████████████████████

21  ██████████████████████████████████████████████).

22  [29] See Iams Decl., Ex. 2, Cisneros Dep. Tr. at 41:15 – 42:19 (discussing various companies in North

23  America to whom OmniVision markets its products, including ██████████████████ and
   ██████.  Indeed, OmniVision's largest customer is █████████████████████ See e.g., id.,

24  Ex. 16 at OVT0450956 (OmniVision board presentation showing sales to ██████ as constituting more

25  than ██████████████ for the quarter).

26  [30] See Iams Decl., Ex. 33 ████████████████████████████████████████████
   id., Ex. 2, Cisneros Dep. Tr. at 108:18 – 112:14 ████████████████████████████████

27  ████████████████████████████████████████████████████████

28  [31] See e.g., Iams Decl., Exs. 16, 18, 34-37 (OmniVision quarterly board presentation ██████████



1  OmniVision and its customers, including customers in the United States.[32] ███████

2  ████████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ██████████[33]█████████████████████████████████

6  ████████████████████████████████████████████

7  ███████████████████[34]██████████████████████████

8  ██████████████████████████████████████████[35]

9      The TSMC Defendants' active involvement in the sales activity of ██████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 █████████[36]  In this regard,█████████████████████████

13 _____

14 [32] *See* Iams Decl., Ex. 31, Wang Dep. Tr. at 110:5-14████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████, *id.*, Ex. 1,

17 Cheng Dep. Tr. at 115:14-17████████████████, *id.* at 124:8-14

18 ████████████████████████████████████████████

19 [33] The purpose of TSMC Ltd.'s████████████████████████

20 ████████████████) *See* Iams Decl., Ex. 31, Wang Dep. Tr. at 36:4-17; *see also id.*, Ex. 38 (email requesting████████████); *id.*, Ex. 39 at

21 TSMCZIP02656307 (email summarizing meeting between███████████; *id.*, Ex. 40 (summary of meeting between███████████.

22 [34] Iams Decl., Ex. 1, Cheng Dep. Tr. at 119:4-18████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████

26 [35] *See e.g.*, Iams Decl., Ex. 41 (notes from meeting between██████; *id.*, Ex. 40 (notes

27 from pre-meeting between██████; *id.*, Ex. 42 (TSMC email to████████, *see also id.*, Ex. 31, Wang Dep. 217:3 – 218:15

28 ████████. [36] *See e.g.*, Iams Decl., Ex. 1, Cheng Dep. Tr. at 190:1-13 ████████

8

1 ████████████████████████████████████████████

2 ██████████ 37  As a result of this activity,████████████████████████

3 ████████████████████████████████████████████ 38

4      In this action, Ziptronix accuses the named defendants of infringing selected claims of the

5 asserted patents, including acts of direct infringement under 35 U.S.C. §§ 271(a) and 271(g), and of

6 indirect infringement by actively inducing infringement of others within the meaning of § 271 (b).

7 The acts of direct infringement include infringing sales in the United States of products directly

8 encompassed by the claims, as well as the sales and use in the United States of products

9 manufactured outside the United States using processes protected by U.S. patents as proscribed by

10 35 U.S.C. § 271(g).  The acts of infringement by inducement by both TSMC Defendants include

11 active encouragement of the adoption and subsequent use of the accused products, including in

12 various consumer products, as well as the active encouragement and assistance in the adoption and

13 use of the technology by co-defendant OmniVision.

## III.   ARGUMENT

15      An award of summary judgment is appropriate only "if the movant shows that there is no

16 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

17 Fed. R. Civ. P. 56(a).   A genuine issue of material fact is one "that might affect the outcome of the

18 suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

19 dispute presents a genuine issue of material fact "if the evidence is such that a reasonable jury could

20 return a verdict for the non-moving party."  *Id.*  "[I]n ruling on a motion for summary judgment, the

---

*id.*, Ex. 31, Wang Dep. Tr. at 175:20 – 177:9 ███████████ *id.*, Ex. 43 (document demonstrating which specific OmniVision products are████

37 *See* Iams Decl., Ex. 1, Cheng Dep. Tr. at 51:2-8████████████

38 *See* Iams Decl., Ex. 1, Cheng Dep. Tr. at 124:8-14████████████

nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotations and citations omitted).

As demonstrated hereinbelow, the evidence supports a finding of both direct and indirect infringement, as to both TSMC Ltd. and TSMC NA, such that the present motion must be denied, particularly in light of the standard applicable to motions for summary judgment, generally.

A.     **The Evidence Supports Ziptronix's Claims of Direct Infringement Against the TSMC Parties**

Liability for direct infringement under 35 U.S.C. § 271(a) lies where one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a). Liability for infringement also results from offers to sell, sales or uses within the United States of a product that is made outside of the U.S. by a process patented in the United States. 35 U.S.C. § 271(g).

Under controlling precedent of the Court of Appeals for the Federal Circuit, an infringing sale is not confined to a single point in time or place, and may be defined by various events culminating in the transfer, or eventual transfer, of goods from one party to another. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) (*citing North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994)) ("[T]he 'selling' of an infringing article has both a physical and a conceptual dimension to it."). As a result, an infringing sale may be defined either in reference to the locations of the seller and the buyer or, alternatively, in relation to "the single point at which some legally operative act took place, such as the place where the sale transaction would be deemed to have occurred as a matter of commercial law." *Id.*

Thus, an actionable "sale" within the meaning of the statute is not limited only to the transfer of tangible goods, but rather may also be the agreement by which such a transfer subsequently takes place. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010) (*citing NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1319

(Fed. Cir. 2005)).  The Federal Circuit has recognized, therefore, that "a contract can constitute a sale to trigger infringement liability."  *Id.*  In considering the issue of an actionable infringing sale (as contrasted to offers of sale), the Federal Circuit in *Transocean* found relevant that the potentially infringing article was the oil rig sold under the contract, not the modified rig design that was subsequently delivered to the United States.  *Id.*  Accordingly, the act of contracting alone—as distinguished from the facts related to performance and delivery—may suffice to establish liability for an infringing sale.  *Id.* ("The potentially infringing article *is the rig sold in the contract*, not the altered rig that Maersk USA delivered to the U.S.") (emphasis added).

In this case, there is substantial contracting activity performed in the United States sufficient, *at a minimum*, to give rise to triable issues of fact.[39]  Defendants concede that the parameters for all offers to OmniVision are established in advance by TSMC Ltd. and that TSMC NA █████████ ████████████ provides these terms to OmniVision in the United States in the form of a price quotation.[40]  OmniVision places orders with TSMC NA in response to the quotations, which are accepted by TSMC NA, also in the United States.[41]  It is also known that TSMC NA invoices OmniVision within the United States, triggering OmniVision's payment for the infringing image sensors to be sent to a ████████████████████████████████[42]  These activities constitute actionable, infringing sales of the accused image sensors within the United States since all

[39]  Indeed, as further discussed below, the evidence illustrates more than just a contractual relationship between the TSMC Defendants and OmniVision, and in fact ████████████ ████████████████████████.  *See e.g.*, Iams Decl., Ex. 44 (TSMC document indicating that TSMC is ████████); *id.*, Ex. 45 at TSMCZIP02243347 (TSMC presentation indicating that ████████ ████████████████████████; *id.*, Ex. 46 at Slide 4 (produced natively) ████████████).

[40]  *See* TSMC Br., Cheng Decl. ¶ 5; Iams Decl., Ex. 31, Wang Dep. Tr. at 116:1-4 (acknowledging that ████████ directs ████████ with respect to ████████).
[41]  *See* TSMC Br., Cheng Decl., Ex. B; Iams Decl., Ex. 1, Cheng Dep. Tr. at 40:15 – 41:3
[42]  *See* TSMC Br., Cheng Decl. ¶ 6; *id.* at Ex. C ████████████████████; Iams Decl., Ex. 1, Cheng Dep. Tr. at 41:4-17 ████████████████████.

elements of a complete contract for the sale of goods (as well as the resulting payment) occurs in the United States, with the related knowledge and understanding on the part of each party that image sensors will be incorporated into products that will be imported and sold in the United States.[43]  *See Transocean*, 617 F.3d at 1311 (noting that "a contract can constitute a sale to trigger infringement liability . . .").

Defendants attempt to obscure the significance of the material facts related to infringing sales activity in the United States by dividing the discussion between the TSMC Ltd. and TSMC NA entities.  Under this approach, Defendants describe the material events relating to contracting by reference to TSMC Ltd. (i.e., attempting to deny any direct offer by TSMC Ltd. in the United States), and then ignore the same transactional events when describing the relevant activities of TSMC Ltd.'s related entity, TSMC NA, in the United States.[44]  For example, in characterizing the activities of TSMC Ltd., Defendants refer to certain "essential activities" related to formal contracting.  At page 1 of its brief, Defendants stress the absence of any direct price quotation by TSMC *Ltd.* in the United States, which Defendants also refer to as "the *sine qua non* of contracting for the sale of goods under case law defining the location of infringing activity."  TSMC Br. at 1.  The balance of its submission nowhere acknowledges that these *same events* as discussed in detail above actually *do occur* in the United States, as performed by TSMC Ltd.'s wholly owned subsidiary, TSMC NA, ████████████████████and under specific guidelines directly established and dictated by TSMC Ltd. for the sale of the accused products.[45]

---

[43] *See e.g.*, Iams Decl., Ex. 1, Cheng Dep. Tr. at 51:2-8████████████████████; *id.* at 112:12 – 113:3███████████; *id.*, Ex. 31, Wang Dep. Tr. at 176:13 – 178:6██████████████.

[44] *See e.g.*, TSMC Br. at 10 ("The 'contracting' activities conducted by TSMC-Ltd. occurred exclusively in Taiwan, not the United States.").

[45] These infringing activities are attributable to both TSMC Ltd. and TSMC NA. *See Fellowes, Inc. v. Michilin Prosperity Company, Ltd.*, 491 F. Supp. 2d 571, 580-81, 83 (E.D. Va. 2007) (finding that Taiwan-based manufacturer having a domestic agent made infringing sales within the United States). *See* Iams Decl., Ex. 1, Cheng Dep. Tr. at 37:6-9████████████████; *id.* at 23:17-21.

In an effort to distinguish the relevant acts performed by TSMC NA in the United States, ███████████████████████████████████████████████████████████████ ████████████████████ while ignoring TSMC NA's relevant contracting activity giving rise to an actual infringing sale in the United States as a matter of law. With respect to Defendants' efforts to minimize the significance of the relevant contracting activities performed by TSMC NA in the United States on████████████████████████████████ the Federal Circuit in *Litecubes* made it clear that passage of legal title does not control over "the more familiar places of contracting and performance." 523 F.3d at 1370. And, as noted previously, the Federal Circuit has also made it clear that "[a] 'sale' is not limited to the transfer of tangible property; a sale may also be the agreement by which such a transfer takes place." *Transocean*, 617 F.3d at 1311 (noting that Federal Circuit "precedent establishes that a contract can constitute a sale to trigger infringement liability . . .").

In light of the undisputed material facts establishing that sales of the accused products occured in the United States, the authorities on which Defendants attempt to rely are clearly distinguishable. For example, in *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, the Federal Circuit expressly recognized that the sales at issue in that case were fully consummated in Japan, "where [the parties and] all of the essential activities took place." *MEMC*, 420 F.3d 1369, 1376-77 (Fed. Cir. 2005). In that case, none of the relevant activities essential to establishing a contract was performed in the United States. *Id*. In the present case, by contrast, *all* of the activities essential to the establishment of a contract, including price quotations, purchase orders, invoices, and wire payments, originated within or were sent to the United States in consummation of the agreements for the sale of the accused products.

Defendants' reliance on *Rotec Indus., Inc. v. Mitsubishi Corp.*, is similarly misplaced. 215 F.3d 1246 (Fed. Cir. 2000). There, in the context of alleged § 271(a) liability for an infringing *offer for sale* related to a commercial installation in the People's Republic of China, the Federal Circuit recognized that no offer had been made, and noted further the absence of *any* evidence of a relevant communication between the defendant and any third party in the United States. *Id*. at 1255 ("In the absence of a communication with a third party, it is difficult to imagine any commercial detriment of

13

1    the rightful patentee taking place.").   The present action, however, involves activity beyond mere

2    communication within the United States as noted above, including conduct sufficient to establish an

3    actual contract for infringing sales of the accused products between the TSMC Defendants and

4    OmniVision.

5         Defendants' additionally seek to rely on three district court decisions, as cited at page 14 of

6    its Memorandum, for the proposition that contracts for the sale of goods delivered abroad are not

7    actionable under U.S. patent law.   Notably, in each of the cases relied upon by Defendants, and

8    unlike the circumstances presented here, the district court found that the particular products subject

9    to the relevant motions were destined for final delivery and use outside the United States and were

10   never intended or expected to touch U.S. soil.   *See e.g., ION, Inc. v. Sercel, Inc.*, No. 5:06-CV-236-

11   DF, 2010 WL 3768110, *3 (E.D. Tex. Sept. 16, 2010) ("[T]he sensors at issue were manufactured

12   overseas, delivered overseas, and never crossed U.S. borders.");[46] *Quality Tubing, Inc. v. Precision*

13   *Tube Holdings Corp.*, 75 F. Supp. 2d 613, 614 (S.D. Tex. 1999) (noting products were manufactured

14   in Norway, delivered in the United Kingdom or Norway, for eventual use in Norway); *and Halo*

15   *Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F. Supp. 2d 1173, 1207 (D. Nev. 2011) (finding that

16   the accused products were at no point in the United States).

17        Defendants also seek to rely on the decision of the Eastern District of Texas in *Lake*

18   *Cherokee Hard Drive Tech., L.L.C. v. Marvell Semiconductor, Inc.*, 2:10-CV-216-JRG, 2013 WL

19   4054915 (E.D. Tex. Aug. 6, 2013) (TSMC Br. at 15).   In the *Lake Cherokee* case, however, the

20   district court specifically found a disputed issue of material fact with respect to the accused products

21   that were delivered by the defendant outside the United States but subsequently incorporated into

22   consumer products and imported by "downstream" customers for actual use in the United States.   *Id.*

23   at *3 ("[T]here remains a genuine issue of material fact as to whether accused products

24   manufactured and delivered abroad but imported in to the United States market by downstream

25

26   ─────────────────────
     [46]  Defendants also mischaracterize the district court's holding in the *Ion v. Sercel* case as

27   "overturning a $30 million jury award," when the JMOL motion at issue there actually involved only
     a fraction of the products subject to the damage award which were demonstrated by the evidence as

28   destined for final use in Venezuela, Brazil, and Canada, without touching U.S. soil.   2010 WL
     3768110, *1 ("This motion affects $5.421 million of the $25,155,645 lost profits award.").

14

customers . . . constitute an infringing sale under § 271(a).").  In this case, the record is replete with evidence demonstrating that the accused BSI image sensor products at issue are incorporated into consumer products for eventual importation, sale, and use in the United States.[47]

In sum, the evidence presented supports Ziptronix's claims against Defendants TSMC Ltd. and TSMC NA for direct infringement, and as such, there are presented at least disputed issues of material fact related to actionable sales in the United States.  Accordingly, Defendants' Motion for Summary Judgment must be denied as it concerns Ziptronix's pending claims for direct patent infringement.

## B. The Evidence Further Supports Ziptronix's Claims of Indirect Infringement Against the TSMC Parties

In addition to liability for acts of direct infringement, the U.S. patent laws also encompass acts of "indirect" infringement, including for inducement of direct infringement by third parties under Section 271(b) of the Patent Act ("[w]hoever actively induces infringement of a patent shall be liable as an infringer").  35 U.S.C. § 271(b).  A claim for inducement is established where the accused party intentionally induced another party's direct infringement.  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1303-04 (Fed. Cir. 2012); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060, 2068 (2011) (intent element satisfied based on a showing of willful blindness).  Proof of the requisite knowledge/intent may be established by circumstantial evidence.  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)); *see also Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed. Cir. 2004).

Additionally, the acts giving rise to a claim for inducing infringement of a United States patent may be performed entirely outside the United States.  *Merial Ltd*, 681 F.3d at 1302; *see also*

---

[47] *See e.g.*, Iams Decl., Ex. 47 ███████████████████████████████████████ ██████████████████████████████████████████████) *id.*, Ex. 48 ██████████████████████████████████████████████████████████████) *id.*, Ex. 1, Cheng Dep. Tr. at 51:2-8 ███████████████████████████████████████████████████████████████████████████████; *id.*, Ex. 2, Cisneros Dep. Tr. at 58:14 – 61:2 ██████████████████████████████.

*DSU Med. Corp.*, 471 F.3d at 1305 (approving a jury instruction reading in part that "induced infringement does not require any activity by the indirect infringer in this country . . .").

As previously demonstrated, the relevant contracting activities between the TSMC Defendants and OmniVision within the United States establish a claim for direct infringement of the asserted patent rights within this country.  The evidence of record also demonstrates that OmniVision, both acting alone and in concert with the TSMC Defendants, engages in additional infringing activity related to actively marketing and selling the accused BSI image sensors to third-party customers within the United States.[48]  As a result of those activities, the accused image sensors are incorporated into a variety of consumer electronics products, such as cellular phones, tablets, and notebooks that are imported by OmniVision's customers, ███████████████ for use and sale throughout the United States[49]—activity which separately constitutes direct infringement in this country.  *See* 35 U.S.C. § 271(a) (encompassing the infringing *use* of a patented device in the United States).  Accordingly, Ziptronix's claims for active inducement of infringement are independently established either by the activities of the TSMC Defendants in inducing the acts of infringement by OmniVision, or by their active assistance of OmniVision in facilitating the use of the accused products (and related infringement) by OmniVision's customers.

Furthermore, although discovery is ongoing, the evidence developed thus far demonstrates th███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████[50]

---

[48] *See e.g.*, Iams Decl., Ex. 2, Cisneros Dep. Tr. at 41:15 – 42:19 ████████████████████
████████████████; *id.* at 108:18 – 112:14 ██████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████████
██████████████████████████████; *id.*, Ex. 49 █████████████; *id.*, Ex. 50 ████████████████
████████████████████████████████████.

[49] *See e.g.*, Iams Decl., Ex. 47 ██████████████████████████████████████████████████

[50] *See e.g.*, Iams Decl., Ex. 51 (TSMC internal email stating that █████████████████████
██████████████████████"); *id.*, Ex. 44 (TSMC document indicating that TSMC is █████████████
███████████); *id.*, Ex. 45 at TSMCZIP02243364 (TSMC presentation indicating that ██████████
██████████████████; *id.*, Ex. 46 at Slide 4 (produced natively) (█████████████

In fact, documentary evidence describes efforts made to foster cooperation and communication between all three named defendants in relation to various aspects of the parties' existing partnership, including aspects related to ████████████████████████████████████████ ██████[51]   Additional evidence details Defendants' acknowledgement ████████████████ ███████████████████████████████████████ thus incentivizing the active encouragement of and cooperation in the sales efforts of OmniVision and eventual use of the accused products by third-party customers in the United States.[52]

In this regard, the evidence of record demonstrates that TSMC Ltd. and TSMC NA have been active participants in various direct interactions with OmniVision ████████████ For instance, Defendants have actively participated in OmniVision's ongoing ████████████ ████████████████████████████████████████████████████ ████████████████████████ he accused BSI image sensors.[53]  The TSMC Defendants have also ████████████████████████████████████████████████████

_____

████████████████████████████████.

[51] *See  e.g.*, Iams  Decl.,  Ex.  52  at  TSMCZIP02172635 ████████████████████ ██████████████████████████████████████████.

[52] *See e.g.*, Iams Decl., Ex. 1, Cheng Dep. Tr. at 112:12 – 113:3████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████; *id.*, Ex. 45 at TSMCZIP02243349 ████████████████████████████████████████.

[53] Iams Decl., Ex. 1, Cheng Dep. Tr. at 119:4-18████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ *id.*, Ex. 31, Wang Dep. Tr. at 36:4-17 ██████████ ████████████████████████████████████████████ ████████████████████████████████ ); *id.* at 177:4-9 ██████████████████████████████, *see also id.*, Ex. 38 (email requesting██████████████████████████; *id.*, Ex. 39 at TSMCZIP02656307 (email summarizing  meeting  between ████████████████████████, *id.*, Ex. 40 (summary of meeting between ████████████████).

The TSMC Defendants have also

[55]

The evidence similarly shows that Defendants have

acts which may independently form the basis for a claim of inducement of infringement under established authorities.[56]  *See MEMC*, 420 F.3d at 1380 (holding that technical support provided through email communication constituted "sufficient circumstantial evidence for a reasonable jury to conclude that [defendant] was not only aware of the potentially infringing activities in the United States by [customer], but also that [defendant] intended to encourage those activities . . ."); *see also Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Electronics Corp.*, 531 F. Supp. 2d 1084, 1114 (N.D. Cal. 2007) (citing *MEMC*, 420 F.3d at 1379).  In this case, the evidence reflects instances of

[57]

---

[54] *See e.g.*, Iams Decl., Ex., 39 at TSMCZIP02656307 (email describing meeting between

*id.*, Ex., 53 (email describing meeting between

*id.*, Ex. 31, Wang Dep. Tr. at 36:4-17 (discussing meetings with

*id.* at 179:12-15

[55] *See* Iams Decl., Ex. 40 (summarizing

*id.*, Ex. 41 (summarizing

*id.*, Ex. 39 (email

[56] *See e.g.*, Iams Decl., Ex., 1, Cheng Dep. Tr. at 44:16-24

[57] *See* Iams Decl., Ex. 1, Cheng Dep. Tr. at 177:6-178:6

The evidence also establishes that the TSMC Defendants had knowledge of Ziptronix's relevant patent rights, both during their pendency in the U.S. Patent and Trademark Office and upon their subsequent issuance as United States patents.   Indeed, at a minimum, Defendants had knowledge of these rights ███████████████████████████████████████ through the institution of the present action.[58]  *See Vasudevan Sofware, Inc. v. MicroStrategy Inc.*, No. 3:11-cv-06627-RS, D.E. 332 at p. 3-4 ("Consistent with 'the other decisions in this District . . . knowledge of the patents can be established through the filing of the complaint.'") (quoting *Bascom Research LLC v. Facebook, Inc.*, No. C 12 -6293, -6294, -6295, -6296, -6297, 2013 WL 968210, *4 (N.D. Cal. Mar. 12, 2013)); *see generally In re Bill of Lading Transportation and Processing System Patent Litigation*, 681 F.3d 1323 (Fed. Cir. 2012) (reversing dismissal of claims for inducement where plaintiff relied on service of complaint for knowledge requirement).

In addition, the evidence also demonstrates pre-suit knowledge of Ziptronix's technology and related patent portfolio.   As previously demonstrated, the TSMC Defendants ███████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████[59]   The related evidence demonstrates that the █████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████[60]   These activities are sufficient to establish triable issues of material fact with respect

---

████████████████████████████████████████████████████████████████ (objections omitted); *see also id.*, Ex. 54 (███████████████████████████████████████; *id.*, Ex. 55 ████████████████████████████████████████████████; *id.*, Ex. 56 ███████████████████████████ *id.*, Ex. 57 (████████████████████████████████████████).

[58] *See* D.E. 1 (Ziptronix's Complaint, asserting 6 patents, and provided notice of two pending patent applications); D.E. 44 (Ziptronix's First Amended Complaint); D.E. 139 (Ziptronix's Second Amended Complaint); Iams Decl., Ex., 58 (letter to counsel for all defendants identifying the U.S. Patent Application No. associated with the now asserted U.S. Patent No. 8,153,505); *see also id.*, Ex. 59 ████████████████████████████████████████████████████.

[59] *See e.g.*, Iams Decl., Ex. 21 ████████████████████████████; *id.*, Ex. 23 █████████ ███████████████████; *id.*, Ex. 25 ████████████████████████ *id.*, Ex. 60 (2007 Ziptronix presentation to TSMC); *id.*, Ex., 22 ██████████████████████████.

[60] *See e.g.*, Iams Decl., Ex. 61 ████████████████████████████████████; *id.*, Ex., 62 (internal TSMC email regarding (██████████████████████████); *id.*, Ex. 26 (TSMC presentation ████████████████████████████████; *id.*, Ex. 63 (internal TSMC email ████████████████████████████████

to knowledge and intent under various authorities.  *See generally Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 842 (N.D. Cal. 2011) (denying summary judgment and finding triable issues of material fact with regard to knowledge and intent to induce due in part to a series of disclosures made by plaintiff to defendants related to the technology at issue); *Tarkus Imaging, Inc. v. Adobe Systems, Inc.*, No. 10-63-LPS, 2012 WL 2175788, *3-5 (D. Del. June 14, 2012) (denying summary judgment and finding triable issues of fact with regard to knowledge and intent to induce, prior to the date of a letter accusing infringement of the patents-in-suit, and finding relevant evidence concerning "conversations, meetings, and emails between [plaintiff's] inventor and [defendant's] representatives . . . ," and noting that licensing offers were made prior to that date);[61] *see also Lutron Electronics Co., Inc. v. Crestron Electronics, Inc.*, No. 2:09-CV-00707 CW, 2013 WL 4881570, *6 (D. Utah Sept. 12, 2013) (denying summary judgment of no induced infringement and finding that competitor's marked products, along with industry publications reporting on related infringement suits was sufficient for a jury to infer the requisite intent to induce infringement by third parties).

The notice and applicability of Ziptronix's patented technology ███████████████ ███████████████████████████████████████████ Documentary evidence indicates, for example, that a█████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████▌▐███████████████████████████████████ ███████████████████████████████ in a BSI manufacturing process.[63]   The

---

██████████████████████*; see also id.*, Exs. 64-67 (documents █████████████████ █████████████.

[61] *See* Iams Decl., Ex. 68 at TSMCZIP02320674 ████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████.

[62] Iams Decl., Ex. 69, Deposition Transcript of Wuu Shou-Gwo ("Wuu Dep. Tr.") at 134:3-13 (deposition testimony of ████████████████████████████████████████.

[63] *See e.g.*, Iams Decl., Ex. 70 at TSMCZIP00817313 (2008 TSMC presentation discussing project with Kodak related to BSI image sensors, including████████████████████████████ ███████████████████; *id.*, Ex. 63 (email reflecting ███████████████████ █████████████████.

evidence similarly indicates that ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████[64]   Indeed,

Defendants evaluated the ███████████████████████████████████████

████████████████████████████████████████████[65]   Additional evidence

suggests that Defendants conducted ████████████████████████████████

████████[66] ████████████████████████████████████████████████████

████████████████████████████████████████████████████████[67]

---

[64] *See e.g.*, Iams Decl., Ex. 63 (email forwarding ███████████████████████to
various employees of TSMC requesting further comments, and including discussion of the
████████████████████████████████████████████*; see also id.*, Ex. 71
(weekly report ████████████████████████████████████████████*; id.*, Ex.
72 (internal TSMC email ████████████████████████

[65] *See e.g.*, Iams Decl., Ex. 73 at TSMCZIP01803914 (email to ██████████████
███████████████████████████████████); *id.*,
Ex. 68 at TSMCZIP02320674 ██████████████████████
██████████████████████████████ *id.*, Ex. 69, Wuu Dep. Tr. at 139:10-23
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████████████████) (objections
omitted).

[66] *See e.g.*, Iams Decl., Ex. 74 at TSMCZIP00047526 (Plaintiff's Exhibit 138 in the deposition of
T.Y. Chu, ██████████████████████████████████████████████████████
██████████████████ *id.*, Ex. 75, Deposition Transcript of Tsung-Yao Chu ("Chu Dep. Tr.") at 60:5 –
62:1 ████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████); *see also id.*, Ex. 76 (TSMC ████████
███████████████████████████████████

[67] *See e.g.*, Iams Decl., Ex. 69, Wuu Dep. Tr. at 129:5-18 ████████████████
██████████████████████████████████████████████.

Furthermore, the evidence also demonstrates that the TSMC Defendants intended that the accused BSI sensors be incorporated into a variety of consumer products for subsequent use and distribution in the United States.[68]   Thus, as in the case of direct infringement, the evidence developed to date is sufficient to raise *at least* disputed issues of material fact with respect to Ziptronix's claims against the TSMC Defendants for inducement of infringement by OmniVision, as well as by its major customers.  Accordingly, Defendants' Motion for Summary Judgment also must be denied with respect to these claims for indirect infringement.

## IV.   CONCLUSION

For the foregoing reasons, Ziptronix respectfully requests that the Court deny the TSMC Defendants' Motion for Summary Judgment in its entirety.

---

[68] *See e.g.*, Iams Decl., Ex. 1, Cheng Dep. Tr. at 51:2-8 ███████████████████████████████
████████████████████████████████████████████████████████████████████████████████
██████████ *id.* at 112:18 – 113:3 ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████ ███████████████████████████████████████
█████████████████████████████████████████████ ); *id.* at 115:9-17 ████████████████
████████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████ *; see also id.*, Ex. 31, Wang Dep. Tr. at 175:20 – 177:9 ███████████████████████████████
████████████████████████████████████████████████████.

DATED:  February 5, 2014          Respectfully submitted,

                                        ALSTON & BIRD LLP


                                        By: */s/ Richard M. McDermott*
                                            Richard M. McDermott (admitted *pro hac vice* )
                                            Blas P. Arroyo (admitted *pro hac vice*)
                                            Jitendra Malik (admitted *pro hac vice*)
                                            Travis J. Iams (admitted *pro hac vice*)
                                            ALSTON & BIRD LLP
                                          101 South Tryon Street, Suite 4000
                                          Charlotte, North Carolina  28280-4000
                                          Telephone:    (704) 444-1000
                                          Facsimile:     (704) 444-1111
                                          rick.mcdermott@alston.com
                                          blas.arroyo@alston.com
                                          jitty.malik@alston.com
                                          travis.iams@alston.com

                                          Sean P. DeBruine (CA Bar No. 168071)
                                          ALSTON & BIRD LLP
                                          275 Middlefield Road, Suite 150
                                          Menlo Park, California  94025-4008
                                          Telephone:    (650) 838-2000
                                          Facsimile:     (650) 838-2001
                                          sean.debruine@alston.com

                                          Attorneys for Plaintiff
                                          ZIPTRONIX, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a copy of RESPONSE IN OPPOSITION TO

DEFENDANT TAIWAN SEMICONDUCTOR MANUFACTURING CO., LTD., AND TSMC

NORTH AMERICA CORP.'S MOTION FOR SUMMARY JUDGMENT to be served via

electronic mail on the persons below:


Brian L. Ferrall, Esq.
Jeffrey R. Chanin, Esq.
Leo L. Lam, Esq.
Quyen L. Ta, Esq.
Benjamin W. Berkowitz, Esq.
Thomas E. Gorman, Esq.
Winston Liaw, Esq.
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, CA  94111-1809
Email:  ZiptronixTeam@kvn.com

(*Attorneys for Defendants Taiwan Semiconductor Manufacturing
Company, Ltd. and TSMC North America Corp.*)

Michael J. Lyons, Esq.
Michael F. Carr, Esq.
Solandra J. Craig, Esq.
MORGAN LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306-2122
Email: omnivision0012@morganlewis.com

(*Attorneys for Defendant OmniVision Technologies, Inc.*)



Dated:  February 5, 2014            /s/ Richard M. McDermott
                          _____
                          Richard M. McDermott (admitted *pro hac vice*)
                          Attorneys for Plaintiff
                          ZIPTRONIX, INC.

24