UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZIPTRONIX, INC.,<br><br>  Plaintiff,<br><br>vs.<br><br>OMNIVISION TECHNOLOGIES, INC., TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LTD., and TSMC NORTH AMERICA CORP.,<br><br>  Defendants. | Case No: C 10-05525 SBA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(REDACTED)<br><br>Docket 372 |

Plaintiff Ziptronix, Inc. ("Ziptronix") brings the instant patent infringement action against Defendants OmniVision Technologies, Inc. ("OmniVision"), Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC Ltd."), and TSMC North America Corp. ("TSMC NA") (collectively, "TSMC"), alleging infringement of nine patents[1] involving technology associated with the manufacture and structure of an image sensor found in devices with photo-capturing capabilities, e.g., tablets and smartphones. The parties are presently before the Court on TSMC's motion for summary judgment. Ziptronix opposes the motion. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS TSMC's motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] The patents-in-suit are Unites States Patent Nos.: 7,387,944 ("the '944 Patent"), 7,335,572 ("the '572 Patent"), 7,553,744 ("the '744 Patent"), 7,037,755 ("the '755 Patent"), 6,864,585 ("the '585 Patent"), 7,807,549 ("the '549 Patent), 7,871,898 ("the '898 Patent"), 8,053,329 ("the '329 Patent"), and 8,153,505 ("the '505 Patent") (collectively, "the patents-in-suit").

## I. BACKGROUND[2]

Ziptronix is a North Carolina company with its principal place of business in North Carolina. Ziptronix develops technologies concerning semiconductor integration processes, and is the owner of patents covering technologies related to advanced semiconductor processing. Specifically, Ziptronix owns patents directed to the bonding technology essential to the fabrication of the accused products in this action - OmniVision's backside-illuminated image sensors ("image sensors").[3] Ziptronix also owns patents directed to the structures of the image sensors themselves.

OmniVision is a Delaware corporation that is headquartered in Santa Clara, California. OmniVision designs image sensor chips that are used in a variety of electronic products, including tablets and smartphones. The image sensors are the "brains" behind the imaging technology in these products. OmniVision secures the production of the image sensors through several manufacturing partners in Asia, including TSMC Ltd.

TSMC Ltd. is a Taiwanese corporation that is headquartered in Hsinchu, Taiwan. TSMC Ltd. manufactures semiconductor wafers ("wafers"), a component of the accused image sensors. TSMC Ltd. serves as the "long-time foundry and process technology partner"[4] of OmniVision. In this capacity, TSMC Ltd. manufactures wafers on behalf of OmniVision in Taiwan. After the wafers are manufactured, they are delivered to OmniVision or one of its vendors in Taiwan. OmniVision or one of its customers then arranges for additional components to be added to the wafers by several manufacturing firms in Asia. After the manufacturing process is complete, the finished products (i.e., the accused image sensors) are delivered to third-party fabricators in Asia for inclusion into

---

[2] The parties are familiar with the facts of this case. As such, the Court will only recite those facts that are relevant to resolving the instant motion. The Court finds the facts set forth in this section to be undisputed.

[3] An image sensor is a device that captures and converts light into an electronic signal.

[4] According to TSMC, it pioneered the "foundry" model, whereby customers approach TSMC Ltd. with a chip design and rely on TSMC Ltd. to manufacture the design in silicon wafers.

1  end-user applications such as tablets and smartphones. According to Ziptronix, the end-
2  user applications are then imported into the United States by OmniVision's customers and
3  sold in the United States.
4      TSMC NA, a subsidiary of TSMC Ltd., is a corporation headquartered in San Jose,
5  California. TSMC NA facilitates sales of TSMC Ltd.'s wafers between TSMC Ltd. and its
6  customers in the United States, including OmniVision. TSMC NA also performs certain
7  marketing, customer service, and administrative functions in the United States for TSMC
8  Ltd.
9      Ziptronix accuses TSMC Ltd. and TSMC NA of engaging in acts of direct and
10 indirect infringement. The acts of direct infringement include TSMC Ltd.'s and/or TSMC
11 NA's sale of the image sensors and/or the wafers used in the image sensors within the
12 United States. The acts of indirect infringement include TSMC Ltd.'s and/or TSMC NA's
13 induced infringement in the form of actively and knowingly encouraging OmniVision to
14 directly infringe the patents-in-suit.[5] The acts of indirect infringement also include TSMC
15 Ltd.'s induced infringement in the form of actively and knowingly encouraging TSMC NA
16 to directly infringe the patents-in-suit.

## II. <u>LEGAL STANDARD</u>

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324

---

[5] Ziptronix accuses OmniVision of directly infringing the patents-in-suit by making, using, offering to sell, selling, and/or importing the accused image sensors and/or the wafers used in the image sensors into the United States. Ziptronix also accuses OmniVision of inducing infringement of the patents-in-suit by actively and knowingly encouraging third party Original Equipment Manufacturers, Value Added Resellers, and Distributors to use, offer to sell, sell, and/or import the accused image sensors and/or the wafers used in the image sensors into the United States.

(1986); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in its favor. Anderson, 477 U.S. at 252, 257. In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. Id. at 255.

## III. DISCUSSION

The instant motion implicates the presumption against extraterritoriality, i.e., the presumption that United States patent law does not operate outside the United States to prohibit infringement abroad. TSMC contends that summary judgment is appropriate because neither TSMC Ltd. nor TSMC NA has committed or induced any infringing acts "within the United States." Ziptronix disagrees, arguing that relevant acts of TSMC Ltd. and TSMC NA are "clearly" encompassed within the scope of United States patent law.

### A. Direct Infringement

Because it is undisputed that neither TSMC Ltd. nor TSMC NA make, use, or import into the United States the accused image sensors or the wafers used in the image sensors, the question before the Court with respect to TSMC Ltd.'s and TSMC NA's direct infringement liability is whether the transactions between the TSMC entities and OmniVision constitute sales or offers to sell "within the United States."

An act of direct patent infringement occurs when an entity "without authority . . . offers to sell, or sells any patented invention, within the United States . . ." 35 U.S.C. § 271(a). An act of direct infringement also occurs when an entity "without authority . . .

offers to sell, [or] sells . . . within the United States a product which is made by a process patented in the United States . . ." 35 U.S.C. § 271(g). "It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." Power Integrations v. Fairchild Semiconductor Int'l, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("foreign exploitation of a patented invention . . . is not infringement at all"). The "general rule under United States patent law is that no infringement occurs when a patented product is made and sold in another country." Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 441 (2007). "[F]oreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries." Id. at 456. "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." Id. at 454-455.

It is well established that direct infringement liability is "limited to infringing activities that occur within the United States." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1375 (Fed. Cir. 2005). "Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." Id. at 1377. Whether activities in the United States are sufficient to establish an "offer to sell" or "sale" within the meaning of § 271(a) may be resolved on summary judgment. Id. at 1375-1377 (affirming summary judgment of no direct infringement for product sales in Japan).

In determining the location of a "sale" under § 271(a), the location of negotiation and contracting does not control; courts may also consider "other factors such as the place of performance." Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296, 1310 (Fed. Cir. 2010); see MEMC, 420 F.3d at 1377 ("[T]he criterion for determining the location of a "sale" under section 271(a) is not necessarily where legal title passes, because the 'more familiar places of contracting and performance' may take precedence over the passage of legal title."). "An offer to sell is a distinct act of infringement separate from an actual sale. An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement." Transocean, 617

F.3d at 1308; see Cybiotronics, Ltd. v. Golden Source Electronics Ltd.,130 F.Supp.2d 1152, 1171 (C.D. Cal. 2001) (an "offer to sell" is an attempted sale; the "offer to sell" language found in § 271(a) merely allows a plaintiff to seek liability for activity that does not constitute a "sale"). "In order for an offer to sell to constitute infringement, the offer must be to sell a patented invention within the United States. The focus should not be on the location of the offer, but rather the location of the future sale that would occur pursuant to the offer." Id. at 1309. "[T]he location of the contemplated sale controls whether there is an offer to sell within the United States." Id. (determining that an offer which was made in Norway by a U.S. company to sell a patented invention to another U.S. company for delivery and use in the U.S. constitutes an offer to sell within the U.S. under § 271(a)).

The relevant facts related to TSMC Ltd.'s and TSMC NA's direct infringement liability are largely undisputed. TSMC Ltd., a Taiwan company, manufactures the accused wafers for OmniVision, a California corporation. The manufacture of the wafers originates when TSMC Ltd. supplies TSMC NA with price quotations that are forwarded by TSMC NA to TSMC Ltd.'s customers such as OmniVision.[6] If OmniVision agrees to the terms of the price quotations, one of its foreign subsidiaries sends a purchase order to TSMC NA. TSMC NA then enters the purchase order into its computer system, which transmits the relevant product number, quantity, and price to TSMC Ltd. After receiving a purchase order from TSMC NA, TSMC Ltd. manufactures the wafers in Taiwan. When the wafers are ready for pick-up, TSMC NA sends an invoice to OmniVision's foreign subsidiary "C/O OmniVision," giving it ▮ days to pay. OmniVision's foreign subsidiary pays TSMC NA electronically in the United States, and then TSMC NA transfers ▮ of that amount to TSMC Ltd. in Taiwan. TSMC NA retains the remaining ▮.[7]

After the wafers are delivered to OmniVision or one of its vendors in Taiwan,

---
[6] TSMC NA is only allowed to issue price quotations that comply with TSMC Ltd.'s pricing guidelines. TSMC Ltd. must approve any deviations from its pricing guidance.

[7] California does not collect sales tax on such transactions because they are not deemed to be sales in California. The Internal Revenue Service considers only ▮ ▮ to be revenue of TSMC NA.

- 6 -

OmniVision or one of its customers arranges for additional components to be added to the wafers by several different foreign entities in Asia.[8] Once the additional manufacturing steps are completed, OmniVision or one of its customers arranges for the finished image sensors (i.e., the accused image sensors) to be delivered to third-party fabricators for incorporation into end-user applications such as tablets and smartphones. Products containing the accused image sensors are then imported into and sold in the United States. It is undisputed that neither TSMC Ltd. nor TSMC NA imports the accused image sensors and/or the wafers used in the image sensors into the United States. Further, there is no evidence that TSMC Ltd. or TSMC NA directs any entity to import the accused products into the United States.

Ziptronix contends that summary judgment is inappropriate because, at a minimum, a triable issue of fact exists as to whether the accused wafers were sold within the United States. According to Ziptronix, the act of contracting alone is sufficient to establish direct liability for an infringing sale within the United States, and that all of the activities essential to the establishment of a contract, including price quotations, purchase orders, invoices, and wire payments originated within or were sent to the United States in consummation of the agreements for the sale of the accused wafers.

As an initial matter, the Court notes that Ziptronix does not treat TSMC Ltd. and TSMC NA as separate legal entities. Ziptronix presents no authority or legal analysis establishing a basis for ignoring the corporate form. Ziptronix has not shown that it is appropriate to pierce the corporate veil or to treat the TSMC entities as alter egos. That aside, even accepting Ziptronix's position that the acts of TSMC NA and TSMC Ltd. can

---

[8] Neither TSMC entity performs any of the subsequent manufacturing steps. OmniVision contracts with VisEra Technologies Company, Ltd. ("VisEra") to apply color filters and microlens arrays to the wafers so that they can process light. OmniVision then transfers the wafers to Xintec, Inc. ("Xintec"), which dices the wafers into chips and packages them in plastic casing. OmniVision or one of its customers then arranges for the chips to be transferred to a third firm for testing and circuit probing, and then to a fourth firm that adds a lens and packages the product into a camera module. It is undisputed that TSMC Ltd. is a minority shareholder in both VisEra and Xintec, and that both of these companies are located in Taiwan.

be considered together in determining direct infringement liability, and that the TSMC entities and OmniVision executed valid contracts in the United States for the "sale" of the accused wafers, neither TSMC Ltd. nor TSMC NA is liable for direct infringement because the accused wafers were not sold "within the United States."

It is undisputed that TSMC Ltd. manufactures and delivers the accused wafers in Taiwan. Therefore, at most, the evidence shows that the TSMC entities engaged in conduct amounting to domestic contracts for foreign sales—that is, contracts executed in the United States but contemplating strictly foreign manufacture and delivery. Such conduct does not constitute direct infringement because the accused wafers are manufactured and sold outside the United States.[9] "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." Microsoft, 550 U.S. at 441; see Power Integrations, 711 F.3d at 1371-1372 (a patentee is not entitled to damages for sales consummated in foreign markets; foreign exploitation of a patented invention is not infringement at all). In light of the strong presumption that United States patent law does not operate extraterritorially, the Court finds that the place of manufacture and the location of the contemplated sales (i.e., Taiwan) are determinative of direct infringement liability. See Transocean, 617 F.3d at 1309-1310; see also Ion, Inc. v. Sercel, Inc., 2010 WL 3768110, at *4 (E.D. Tex. 2010) (applying Transocean and holding that devices manufactured and distributed abroad fall outside the scope of U.S patent law even though defendant quoted prices from its U.S. offices, orders were received in the U.S., and payment was received in the U.S. in U.S. dollars), aff'd, 464 Fed.Appx. 901 (Fed. Cir.

---

[9] To the extent that the acts of TSMC Ltd. and/or TSMC NA constitute "offers to sell" rather than "sales" of the accused wafers, such acts do not establish liability for direct infringement because the sales contemplated by the offers were intended, and did, occur outside the United States. See Transocean, 617 F.3d 1309 ("[T]he location of the contemplated sale controls whether there is an offer to sell within the United States); Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Optoelectronics Corp., 531 F.Supp.2d 1084, 1111 (N.D. Cal. 2007) ("In light of the strong presumption against extraterritorial application, . . . an 'offer of sale' may constitute direct infringement only if the contemplated sale is to take place within the United States."); Cybiotronics, 130 F.Supp.2d at 1171 ("An 'offer to sell' made within the United States that contemplates a sale of goods outside of the United States is not within the permissible scope of liability for 35 U.S.C. § 271(a).").

2012); Quality Tubing, Inc. v. Precision Tube Holdings Corp., 75 F.Supp.2d 613, 625 (S.D. Tex. 1999) (holding that the defendant, "as a matter of law, committed no act of infringement under section 271(a) or (g) by contracting, in the United States, to manufacture, sell, and deliver a product in Scotland and Norway, for use in Norway").[10]

Ziptronix, for its part, has failed to demonstrate that the analysis in Transocean does not control. In Transocean, two United States companies signed a contract in Norway for the use of an accused oil rig that was built in Singapore. Transocean, 617 F.3d at 1307. The agreement for the use of the rig specified that the "Operating Area" for the rig was the U.S. Gulf of Mexico. Id. The Federal Circuit held that "a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law." Id. at 1310. In so holding, the Federal Circuit rejected the notion that "the location of negotiation and contracting should control." Id. (noting that "[t]he fact that the offer was negotiated or a contract signed while the two U.S. companies were abroad does not remove this case from statutory liability"). In light of the logic of Transocean, the Court finds that neither TSMC Ltd. nor TSMC NA is liable for direct infringement of the patents-in-suit. The accused wafers are manufactured and delivered abroad in Taiwan. Even if the Court accepts Ziptronix's position that the TSMC entities and OmniVision negotiated and executed contracts for the sale of the accused wafers in the United States, the contracts contemplated delivery and performance abroad. Thus, under Transocean, the accused wafers are not sold "within the United States."

To the extent Ziptronix contends that a triable issue of fact exists because the accused image sensors containing the wafers are eventually incorporated into consumer products for importation, sale and use in the United States, the Court disagrees. In support

---

[10] Ziptronix suggests that TSMC's knowledge that the accused wafers will eventually be incorporated into products that will be imported and sold in the United States is relevant to the direct infringement inquiry. The Court disagrees. "Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." MEMC, 420 F.3d at 1377; see also Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd., 479 F.Supp.2d 388, 405 (S.D. N.Y. 2007) (the fact that party had knowledge that another party was importing allegedly infringing goods into the United States does not create liability under § 271(a)).

of its position, Ziptronix relies on Lake Cherokee Hard Drive Technologies, L.L.C. v. Marvell Semiconductor, Inc., 964 F.Supp.2d 653 (E.D. Tex. 2013). In that case, the district court granted defendant's motion for summary judgment "of no liability" with respect to products shipped from outside the United States to customers located outside the United States and which never reach the domestic United States market. Id. at 657-658. In doing so, the court stated that even if it were to accept plaintiff's position that the negotiation and execution of a product supply agreement constituted a contract between two United States companies, negotiated and executed within the United States amounting to a "sale," it must, under Transocean, reject plaintiff's argument that such a sale occurred "within the United States" because the product was both manufactured and delivered abroad. Id. The court, however, denied summary judgment "with respect to accused products that ultimately reach the United States market and compete domestically with the rights of the patent holder," finding that a genuine issue of material fact existed as to whether accused products manufactured and delivered abroad but ultimately imported into the United States market by downstream customers constituted an infringing sale under § 271(a). Id. at 658.

While the Court agrees with the district court in Lake Cherokee that summary judgment was warranted under Transocean, the Court is not persuaded that the denial of summary judgment was appropriate given the strong presumption that United States patent law does not operate extraterritorially and the general rule that no infringement occurs when a patented product is made and sold in another country. See France Telecom S.A. v. Marvell Semiconductor Inc.,--- F.Supp.2d ----, 2014 WL 1478850, at *16-17 (N.D. Cal. 2014) (finding the district court's denial of summary judgment in Lake Cherokee unpersuasive; concluding that, since all sales of the accused chips happened abroad, plaintiff is not entitled to damages because the chips may ultimately end up and be used in the United States) (citing Power Integrations, 711 F.3d at 1371-1372); Morrison v. Nat'l Australia Bank Ltd., 561U.S. 247, 266 (2010) ("But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.") (emphasis in original).

**B. Indirect Infringement**

TSMC contends that summary judgment is appropriate on Ziptronix's indirect infringement claims because Ziptronix cannot establish that TSMC Ltd. actively induced TSMC NA to engage in any act of direct infringement within the United States or that either of the TSMC entities actively induced OmniVision to engage in any act of direct infringement within the United States.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To prevail on inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." Kyocera Wireless Corp. v. ITC, 545 F.3d 1340, 1353-1354 (Fed. Cir. 2008) (internal quotation marks omitted). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." Id. at 1306. Even indirect infringement, which can encompass conduct occurring outside the United States, requires underlying direct infringement in the United States. Power Integrations, 711 F.3d at 1371. United States patent laws do not provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all. Id.

The Court finds that Ziptronix has failed to demonstrate that there has been any underlying act of direct infringement within the United States to withstand TSMC's motion for summary judgment. The operative complaint alleges that TSMC Ltd. and/or TSMC NA indirectly infringed the patents-in-suit by actively and knowingly encouraging (i.e., inducing) OmniVision to use, offer to sell, sell, and/or import the accused image sensors and/or the wafers used in the image sensors into the United States. The operative complaint further alleges that TSMC Ltd. indirectly infringed the patents-in-suit by actively and knowingly encouraging (i.e., inducing) TSMC NA to use, offer to sell, sell, and/or import the accused image sensors and/or the wafers used in image sensors into the United States.

Because the Court has determined that TSMC NA is not liable for direct infringement, summary judgment is appropriate with respect to Ziptronix's claims for

indirect infringement predicated on TSMC Ltd.'s alleged inducement of TSMC NA's direct infringement.  As for Ziptronix's remaining indirect infringement claims, Ziptronix has failed to demonstrate that either TSMC Ltd. or TSMC NA actively induced any act of direct infringement on the part of OmniVision within the United States.  Ziptronix has not cited to particular evidence in the record from which a jury could render a verdict in its favor.  While Ziptronix contends that OmniVision has engaged in infringing activity "related to actively marketing and selling the accused image sensors to third-party customers within the United States, Ziptronix has not cited any evidence in the record demonstrating that OmniVision uses, offers to sell, or sells the accused image sensors within the United States.  Nor has Ziptronix cited any evidence demonstrating that OmniVision imports the accused image sensors into the United States.

In support of its assertion that OmniVision "engages" in activity "related to" selling the accused image sensors to third-party customers in the United States, Ziptronix directs the Court to evidence showing that OmniVision has a ███████████████ wherein OmniVision has agreed to ███████████████ ███████████████████████████████████████████████ This evidence does not establish direct infringement within the United States.  At most, it establishes that two United States companies ███████████████████████████████████ in the United States ███████████████████████ of image sensors abroad.  As discussed above, such conduct does not constitute a sale "within the United States" amounting to direct infringement.  See Transocean, 617 F.3d at 1309-1310.  No infringement occurs when a patented product is made and sold in another country.  Microsoft, 550 U.S. at 441; see Power Integrations, 711 F.3d at 1371-1372.[11]

---

[11] In its reply brief, TSMC argues that TSMC Ltd. could not have induced infringement by TSMC NA because neither TSMC entity knows of alleged United States sales by OmniVision.  TSMC further argues that TSMC NA could not have formed the requisite specific intent to induce infringement because it lacks knowledge of the accused manufacturing process, and therefore could not have had knowledge that the induced acts constitute patent infringement.  However, because these arguments were not specifically and distinctly raised in TSMC's moving papers, the Court disregards them.  Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009).

Finally, to the extent Ziptronix attempts to argue that TSMC Ltd. and/or TSMC NA is liable for indirect infringement for inducing infringement by OmniVision's customers, the Court rejects this argument. The operative complaint does not allege this theory of liability. As such, it is not properly before the Court. A plaintiff cannot raise a claim for the first time in response to a motion for summary judgment. Paralyzed Veterans of America v. McPherson, 2008 WL 4183981, at *10 (N.D. Cal. 2008) (Armstrong, J.).

### IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. TSMC's motion for summary judgment is GRANTED. Because this Order may contain information within the scope of the parties' protective order, this Order shall remain under seal pending further Order of the Court. By no later than October 16, 2014, the parties shall jointly advise the Court which facts, if any, they contend should be redacted from the public version of this ruling. To the extent any party seeks redaction of any portion of the Court's ruling, such party shall provide the Court with the legal authority for such request and a proposed redacted order for public disclosure.

2. This Order terminates Docket 372.

IT IS SO ORDERED.

Dated: October 21, 2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge